IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on May 26, 2021)

| | |
|---|---|
| **ENTERGY NUCLEAR INDIAN POINT 2, LLC, and ENTERGY NUCLEAR INDIAN POINT 3, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | Case: 21-1401 C<br><br>Judge: _____ |

# COMPLAINT

Plaintiffs Entergy Nuclear Indian Point 2, LLC ("ENIP 2") and Entergy Nuclear Indian Point 3, LLC ("ENIP 3") (collectively, "Plaintiff" or "ENIP"), allege as follows:

## NATURE OF THE CASE

1. This is an action for breach of contract, and a so-called "Round 4" spent nuclear fuel damages case for ENIP 2 regarding Units 1 and 2 of the Indian Point Energy Center ("Indian Point 1" and "Indian Point 2," respectively) and a "Round 3" spent nuclear fuel damages case for ENIP 3 regarding Unit 3 of the Indian Point Energy Center ("Indian Point 3"). All three Units are co-located at the same site in Buchanan, New York.

2. Pursuant to the Nuclear Waste Policy Act of 1982, as amended, 42 U.S.C. §§ 10101, *et seq*. (the "NWPA"), the United States (the "Government"), represented by the U.S. Department of Energy's ("DOE"), and ENIP, through its predecessors in interest, entered into separate Standard Contracts for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contract") for Indian Point Units 1, 2, and 3 in 1983, Contract Nos. DE-CR01-83-NE44373 (Indian Point 1 and 2) and DE-CR01-83NE-44407-IP3 (Indian Point 3). Pursuant to the terms of the Standard Contracts, the Government was to accept and dispose of

spent nuclear fuel and high level waste (collectively for these purposes, "SNF") generated by commercial nuclear power units on or before January 31, 1998, in exchange for payments as provided in the Standard Contract.  Plaintiff and its predecessors have honored all of their contractual obligations under the Standard Contract.  The Government breached the ENIP Standard Contracts by failing to accept SNF for disposal as required.

3. In "Round 1" for Indian Point 1 and 2, the Court ultimately awarded $96,283,546 in damages to ENIP 2 for the period prior to August 31, 2008.  *Consolidated Edison Co. of New York, Inc. v. Entergy Nuclear Indian Point 2, LLC*, 676 F.3d 1331 (Fed. Cir. 2012).  In "Round 2" for Indian Point 1 and 2, the Court ultimately awarded $34,469,598 in damages to ENIP 2 for the period of August 31, 2008, to June 30, 2013.  *Entergy Nuclear Indian Point 2, LLC v. United States*, 128 Fed. Cl. 526 (2016).  In "Round 1" for Indian Point 3, the Court ultimately awarded $80,876,013 in damages to ENIP 3 and Entergy Nuclear FitzPatrick, LLC for the period prior to June 30, 2013.  *Entergy Nuclear FitzPatrick, LLC, et al. v. United States*, No. 03-2627C, 2015 WL 9025699 (Fed. Cl. Dec. 15, 2015).[1]  On June 28, 2019, ENIP filed a lawsuit in Case No. 19-949C to recover damages incurred since July 1, 2013, for Indian Point 2 (Round 3) and Indian Point 3 (Round 2).   Case No. 19-949C seeks recovery of damages incurred through April 30, 2019.

4. In accordance with the Federal Circuit's instruction in *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1376 (Fed. Cir. 2005) to bring separate actions for damages "as they are incurred," ENIP brings this lawsuit to recover damages incurred after May 1, 2019,

---

[1] On March 31, 2017, the James A. FitzPatrick plant was sold to Exelon Generation Company, LLC.  There are now separate Standard Contracts for the Fitzpatrick and Indian Point 3 plants.  Given that Indian Point 1, 2, and 3 share resources and adjacent property, it serves judicial efficiencies to bring these claims together.

2

caused by the government's partial material breach of its unconditional obligation to begin disposing of SNF generated at Indian Point 1, 2 and 3.

## PARTIES

5. ENIP 2 is the owner of Indian Point 1 and Indian Point 2, for which the Atomic Energy Commission ("AEC") issued licenses in 1962 and 1971, respectively.

6. ENIP 3 is the owner of Indian Point 3, for which the Nuclear Regulatory Commission ("NRC") (the successor to the AEC) issued a license in 1975.

7. Indian Point 1, 2 and 3 have generated SNF, which is stored on a single Independent Spent Fuel Storage Installation ("ISFSI") on Indian Point 2's property.

8. Defendant is the United States of America, acting through DOE.  (Defendant may be referred to interchangeably in this Complaint as the United States, DOE, or the Government.)

## JURISDICTION

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1491(a)(1). *See PSEG Nuclear, LLC v. United States*, 465 F.3d 1343, 1349 (Fed. Cir. 2006) (holding that the United States Court of Federal Claims had jurisdiction under the Tucker Act (28 U.S.C. § 1491) to hear plaintiff's breach of contract claims against the Government for DOE's failure to pick up plaintiff's SNF as required under the Standard Contract).

10. The Government's failure to comply with its essential contractual obligation to begin disposing of SNF by January 31, 1998, constitutes a material partial breach of its Standard Contracts with ENIP, for which ENIP may seek recovery. *See Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1374, 1378 (Fed. Cir. 2005).

11. ENIP is entitled to pursue its legal claim without exhausting any administrative remedies.  In companion decisions handed down on August 31, 2000, the United States Court of

3

Appeals for the Federal Circuit has conclusively rejected the Government's exhaustion of remedies jurisdictional defense. *See Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000); *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000).

12.     Furthermore, Article XI of the Standard Contract states, "Nothing in this contract shall be construed to preclude either party from asserting its rights and remedies under the contract or at law."

## STATEMENT OF FACTS

13.     Since enactment of the Atomic Energy Act of 1954, the Government has encouraged the development of commercial reactor technology in the United States. The Indian Point 1, 2, and 3 commercial reactors were developed and operated pursuant to license issued by the AEC and the NRC.

14.     SNF was generated at Indian Point 1, 2, and 3 and remains stored there now on Indian Point 2's property. SNF is composed, in significant part, of uranium and other highly radioactive substances. SNF remains radioactive after it is removed from a nuclear reactor and must be isolated in safe disposal facilities for an indefinite period.

15.     Indian Point 1, 2, and 3 permanently ceased power operations in October 1974, April 2020, and April 2021, respectively.

**A.     The Government's Obligations Under the Standard Contract**

16.     In 1982, Congress enacted the NWPA, codifying and confirming the Federal Government's long-standing commitment to accept responsibility and provide for the timely disposition of civilian SNF. *See* 42 U.S.C. § 10101 *et. seq.* The NWPA provides that the generators and owners of SNF have the primary responsibility to provide for "the interim storage

4

of such waste and spent fuel until such waste and spent fuel is accepted by [DOE] in accordance with the provisions of this Act." 42 U.S.C. § 10131(a)(5).

17. Pursuant to section 302(a)(5)(B) of the NWPA, 42 U.S.C. § 10222(a)(5)(B), DOE was required to commence disposing of commercially-generated SNF no later than January 31, 1998, in return for the payment of fees by utilities and others that generated or held title to the SNF. The fees are paid into the Nuclear Waste Fund, which is the source of funds to cover the Government's costs for disposing of SNF.

18. Pursuant to Section 302 of the NWPA (42 U.S.C. § 10222), the Government in 1983 developed the Standard Contract. The Standard Contract prescribes the payment of certain fees into the Nuclear Waste Fund based on specified criteria, primarily megawatts-electric generated, and the acceptance and disposition of SNF by the Government. *See* 10 C.F.R. § 961.11. Reactor operators were required to enter into these Standard Contracts or risk losing their NRC operating licenses.

19. In 1983, DOE entered into the Standard Contracts at issue here with the then-owners of Indian Point 1, 2 and 3.

20. Article IV of the Standard Contract sets out the Responsibilities of the Parties. Section A of Article IV establishes the Purchaser's Responsibilities, including payment of certain fees.

21. ENIP and its predecessors have fully complied with all of their obligations under the Standard Contracts, including the payment of all required fees when due.

22. The Standard Contracts for ENIP obligated the Government to commence acceptance and disposal of SNF by January 31, 1998. *E.g.,* Standard Contract Art. II, Art. IV.B.5(a).

23. The Standard Contract provided that the DOE was to begin accepting SNF no later than January 31, 1998, and to continue "until such time as all SNF and/or HLW from the civilian nuclear power reactors … has been disposed of." Standard Contract, Art. II.

### B. DOE's Partial Material Breach of Its Contractual Obligation

24. January 31, 1998, came and went without DOE accepting any SNF from any Standard Contract holder, including Plaintiff or its predecessor.

25. A number of Standard Contract holders have filed and pursued lawsuits against the DOE in this Court. It is now undisputed that the government's failure to accept SNF is a partial breach of the Standard Contract. *See, e.g., System Fuels, Inc. v. United States*, 818 F.3d 1302, 1304 (Fed. Cir. 2016).

26. The government's attempts to argue that its failure to begin performance of the Standard Contract constitutes an "unavoidable delay" under the contract have failed. *See Nebraska Pub. Power Dist. v. U.S.*, 590 F.3d 1357 (Fed. Cir. 2010); *Entergy Nuclear Fitzpatrick, LLC v. United States*, 711 F.3d 1382 (Fed. Cir. 2013).

27. The United States is liable to Plaintiff for partial breach of the Standard Contracts.

28. DOE continues to refuse to provide a firm date for commencing the disposal of Plaintiff's SNF.

### C. Nature of Damages Sustained by ENIP as a Result of DOE's Breach

29. ENIP has complied with its obligations under the ENIP Standard Contracts but has not received DOE's promised performance. As a direct consequence of DOE's partial material breach of its statutory and contractual obligations, Plaintiff has been and will be forced to take actions since May 1, 2019, at substantial cost, to maintain the SNF at Indian Point 1, 2 and 3. Moreover, ENIP has incurred other substantial damages, including, but not limited to,

6

regulatory costs, taxes, and fees associated with efforts to ensure sufficient onsite storage capacity at the Indian Point Energy Center.

30. More specifically, as a direct and proximate result of DOE's continuing partial breach of the ENIP Standard Contracts, ENIP has incurred damages including, but not limited to: (1) continuing engineering costs associated with dry fuel storage equipment and facilities; (2) continuing maintenance costs associated with ISFSI and cask systems; (3) licensing and regulatory costs associated with loading and storage of SNF on the ISFSI; (4) costs associated with the design, procurement, testing, training, and operation of dry fuel storage equipment and facilities; (5) costs associated with the development of procedures and the training of employees, management, craftsmen, and contractors in support of dry fuel storage; (6) additional security costs due to additional measures required as a result of dry fuel storage on site, and (6) ongoing dry fuel storage loading campaign costs consisting of capital expenditures and operational and maintenance costs, including costs for acquisition of additional storage cask systems and cask loading costs.

## CLAIMS FOR RELIEF

## COUNT I

**(Partial Material Breach of Express Written Contract)**

31. Paragraphs 1 through 30 are incorporated herein by reference as if set forth in full.

32. The Standard Contracts are valid and binding contracts between Plaintiff and Defendant.

33. The Standard Contracts required Defendant to commence accepting SNF on or before January 31, 1998.

34. ENIP and its predecessors in interest have complied, and ENIP continues to comply, with all of its obligations under the Standard Contracts, including the payment of all required fees into the Nuclear Waste Fund.

35. Defendant, which has an unconditional obligation to commence accepting SNF by January 31, 1998, has not accepted any SNF from Plaintiff.

36. Defendant's failure to perform the services contemplated by the Standard Contracts on or before January 31, 1998, constitutes a partial material breach of the Standard Contracts by Defendant.

37. Plaintiff has incurred and will continue to incur significant damages as a direct and proximate result of Defendant's partial material breach of the Standard Contracts.

38. As a direct and proximate result of Defendant's partial material breach, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant, the United States, for damages incurred beginning May 1, 2019, through a date to be determined prior to trial, in an amount to be determined in further proceedings, together with such additional costs, fees, and other relief as the Court may deem just and appropriate.

Respectfully submitted,

    */s Brad Fagg*
Brad Fagg (Counsel of Record)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania, N.W.
Washington, DC  20004
(202) 739-5191 Telephone
(202) 739-3001 Facsimile

May 26, 2021

Of Counsel:
Paul M. Bessette
Robert P. Goldfin
MORGAN, LEWIS & BOCKIUS LLP

*Attorneys for Plaintiff*
*Entergy Nuclear Indian Point 2, LLC*
*Entergy Nuclear Indian Point 3, LLC*